**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**JEAN ELAINE HAUGHT,**

        Plaintiff,

v.                                     **CIVIL ACTION NO. 2:15-CV-99**
                                            **(BAILEY)**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

        Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge Robert W. Trumble. [Doc. 17]. Pursuant to this Court's local rules, this action was referred to Magistrate Judge Trumble for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Trumble filed his R&R on September 19, 2016, wherein he recommends that the plaintiff's Motion for Summary Judgment be denied, that the defendant's Motion for Summary Judgment be granted, that the decision of the Commissioner be affirmed, and that this case be dismissed with prejudice. On October 3, 2016, the plaintiff timely filed objections to the R&R. [Doc. 18]. For the reasons set forth below, this Court adopts Magistrate Judge Trumble's R&R.

**I.**    **BACKGROUND**

On October 1, 2012, the plaintiff filed a Title II application for a Period of Disability and Disability Insurance Benefits ("DIB"), alleging disability beginning August 20, 2012. [Doc. 6-5 at 2]. The claim was initially denied on November 14, 2012 [Doc. 6-3 at 10], and

1

again upon reconsideration on January 14, 2013 [Doc. 6-3 at 21]. The plaintiff then filed a written request for hearing, and later appeared and testified at a hearing on May 7, 2014, in front of Administrative Law Judge ("ALJ") Terrence Hugar. [*See* Doc. 6-2 at 34-64]. On June 27, 2014, the ALJ entered a decision finding that the plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. [Doc. 6-2 at 20-29]. In accordance with the five-step evaluation process described in 20 C.F.R. § 404.1520, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since August 20, 2012, the alleged onset date. (20 C.F.R. § 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia and depression. (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. The undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) that: requires no more than occasional posturals, except no crawling or climbing of ladders, ropes, or scaffolds; avoids concentrated exposure to fumes, odors, dusts, gases, poor ventilation; is limited to simple routine and repetitive tasks; requires no production rate pace but can perform goal oriented work; and involves no more than occasional interaction with supervisors, coworkers, and the public.

6. The claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

7. The claimant was born on July 30, 1962, and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability

because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.156(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2012, through the date of this decision. (20 C.F.R. § 404.1520(g)).

[*Id.*].

On November 12, 2015, the Appeals Council denied the plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner of Social Security. [Doc. 6-2 at 2]. On December 22, 2015, the plaintiff filed the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security for denying the plaintiff's claim for DIB under Title II of the Social Security Act. [Doc. 1]. The R&R provides a detailed discussion of the plaintiff's medical history, which this Court will not rehash and adopts the facts as stated therein. [Doc. 17].

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a *de novo* review of any portion of the magistrate judge's recommendation to which objection is timely made. As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." *See **Webb v. Califano***, 458 F.Supp. 825 (E.D. Cal. 1979). Because the plaintiff filed timely objections, this Court will undertake a *de novo* review as to those portions of the report and recommendation to which objections were made.

An ALJ's findings will be upheld if supported by substantial evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996)). The issue is not whether a claimant is disabled, but whether the ALJ's finding of disabled or not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

## III.  DISCUSSION

In response to the magistrate judge's R&R, the plaintiff asserts four objections. First, the plaintiff claims that the ALJ failed to properly consider fibromyalgia as required by SSR 12-2p. Second, the plaintiff avers that the decision is based on an error of law because the ALJ failed to consider all of the evidence of record, especially evidence that contradicted his findings. Third, the plaintiff argues that the decision is based on an error of law because the ALJ failed to consider all of the plaintiff's limitations when formulating the residual functional capacity ("RFC") finding and the hypothetical questions to the vocational expert. Finally, the plaintiff claims that the ALJ erred because he failed to properly consider the plaintiff's credibility. This Court notes that each of these points is

verbatim from the plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment [Doc. 10], rather than a direct response to the magistrate judge's R&R, but nonetheless will address the objections in the order that they were raised.

### A. The ALJ's consideration of fibromyalgia was proper under SSR 12-2p.

The plaintiff first claims, as she did in her summary judgment motion, that the ALJ created a "legal impossibility" by finding fibromyalgia to be a "severe impairment" but also that the record did not contain the required evidence needed to establish a diagnosis of fibromyalgia. [Doc. 18 at 2]. She avers that the magistrate judge "missed the point" when he found that, if the ALJ erred in this regard, the error was harmless, particularly because of her contention that the ALJ did not discuss all of the relevant evidence. [*Id.* at 2-3].

It is apparent from the plaintiff's argument that she did not consider the ALJ's third finding in his opinion as a whole. The ultimate finding that the ALJ made was that the plaintiff "has the following severe impairments: fibromyalgia and depression." [Doc. 6-2 at 22]. He notes that these impairments cause "more than minimal limitation" in the plaintiff's ability to perform basic work activities before going into a more detailed discussion of how he came to his conclusion. [*Id.*]. The plaintiff selectively took statements from this detailed discussion and cited to them out of context, arguing that they created a legal impossibility. For example, the ALJ did, in fact, state that "the objective requirements needed to establish [fibromyalgia] are not contained in the evidence." [*Id.*]. But later in the same paragraph, the ALJ noted an alternative means for evaluating fibromyalgia and indicated that, while even this criteria was not "specifically met in the evidence," he gave her "the benefit of the doubt that fibromyalgia is a medically determinable impairment." [*Id.* at 22-23]. The ALJ's third finding also touched upon the plaintiff's multitude of complaints and diagnoses

evidenced in the record, and concluded that these impairments are not "independently severe or cause more than minimal limitations in the claimant's ability to perform basic work activities." [*Id.* at 23]. Importantly, the ALJ stated that *independently* these impairments do not cause the plaintiff to have a medically determinable impairment and then went on to consider the impairments in combination with other impairments in continuing to evaluate the plaintiff for DIB. [*Id.*].

In sum, the plaintiff takes issue with selective statements from the ALJ's analysis, failing to consider his evaluation as whole and ignoring the reasoning favorable to her position. This Court agrees with the magistrate judge that any error committed by the ALJ in reaching his determination that the plaintiff has fibromyalgia and that fibromyalgia is a severe impairment is harmless because, not only did the ALJ ultimately reach the conclusion encouraged by the plaintiff, these conclusions did not end the inquiry. Had the ALJ wholeheartedly agreed that the plaintiff's fibromyalgia is a medically determinable, severe impairment, he still would have found the plaintiff not disabled for the reasons articulated pursuant to the five-step evaluation process, as delineated in the remainder of the opinion. As such, the plaintiff's objection is **OVERRULED**.

### B. The ALJ's decision sufficiently considered evidence of record.

The plaintiff next argues that the ALJ did not properly consider all of the relevant evidence and thus that the ALJ's error was not harmless. [Doc. 18 at 3]. She then contends that the magistrate judge erred by applying an improper legal standard regarding an ALJ's duty to consider and discuss relevant evidence, and that the magistrate judge incorrectly found that the ALJ sufficiently discussed the relevant medical evidence.

1.    <u>The magistrate judge applied the correct legal standard.</u>

The plaintiff states that the magistrate judge's holding that "if an ALJ states that the 'whole record was considered, . . . absent evidence to the contrary, we take [him] at [his] word,'" was incorrect because it enables an ALJ to write a "one sentence decision" stating that the entire record was considered and finding against a claimant, and deterring an appeal of the same because, if the ALJ stated "absent evidence to the contrary," his word is the final matter and no appeal would ever be successful.  [Doc. 18 at 4].  This is not a proper interpretation of the standard.   The standard does not enable an ALJ to act according to the plaintiff's concerns.  The standard simply means that a reviewing court will look for an indication that the ALJ considered the entire record and, unless the reviewing court can find evidence to the contrary, this indication will be affirmed.  In other words, if the ALJ says that he considered the entire record in reaching his decision, and the reviewing court cannot find anything to suggest that the ALJ did not consider the entire record in reaching his decision, the fact that the ALJ considered the entire record–i.e. all of the evidence, both agreeable and conflicting–will be taken as true.  Whether evidence to the contrary exists is a matter for the reviewing court, not for the ALJ to simply declare unchecked, as the plaintiff interprets the standard.  Indeed, the plaintiff's fears may be eased as this Court has conducted *de novo* review of this objectionable portion of the magistrate judge's R&R.

The standard applied by the magistrate judge in his R&R is the correct standard.  As noted by the plaintiff's objection, "[j]udicial review of a final decision regarding disability benefits under the Social Security Act . . . is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was

applied." **Hays**, 907 F.2d at 1456. The plaintiff cites to Fourth Circuit cases in which all relevant evidence and the weight assigned thereto were not sufficiently explained by the ALJ, but these serve to highlight this Court's function in ascertaining whether evidence exists that contradicts the ALJ's contention that he considered the entire record. What the standard here boils down to is determining whether the decision reached by the ALJ is supported by substantial evidence found in the record. Implicit in this standard is that evidence conflicting with the ALJ's decision must not outweigh evidence supportive of the ALJ's decision. Should this Court determine that an excessive amount of conflicting evidence exists in the record that the ALJ did not sufficiently address in his opinion, "evidence to the contrary" exists, and this Court cannot accept the ALJ's contention that he considered the entire record. As such, the ALJ's findings will be upheld if supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. *See* **Milburn**, 138 F.3d at 528; **Hays**, 907 F.2d at 1456. This Court's function is to examine the ALJ's decision and determine whether substantial evidence exists in the record to support the same. Analyzing the purported weight given to the evidence is part of the inquiry.

  2. <u>The magistrate judge properly found that the ALJ considered all relevant evidence.</u>

  The plaintiff avers that the magistrate judge's finding that the ALJ sufficiently discussed the relevant medical evidence and his reasons for determining that the plaintiff's fibromyalgia constitutes a severe impairment are inconsistent with what the ALJ actually

did.[1]  She highlights the existence of medical records that contradicted the ALJ's factual conclusion and that she claims "contained the exact type of evidence required by SSR 12-2p to establish the diagnosis of fibromyalgia," in arguing that the ALJ proceeded through the evaluation process under the impression that the plaintiff's medical record did not establish a diagnosis of fibromyalgia.  [Doc. 18 at 8-9].  This argument is unpersuasive and mooted by the fact that the ALJ did, in fact, make a finding that the plaintiff has the severe impairment of fibromyalgia.  [Doc. 6-2 at 22].  Nonetheless, this Court has conducted *de novo* review of the evidence of record and finds that the ALJ, in making his findings, did consider all relevant evidence, and that the magistrate judge properly found the same.

As correctly stated by the magistrate judge, an ALJ is required to consider all of the relevant medical evidence submitted by a claimant.  20 C.F.R. § 416.920.  However, an ALJ is "not obligated to comment on every piece of evidence presented."  ***Pumphrey v. Comm'r of Soc. Sec.***, 2015 WL 3868354, at *3 (N.D. W.Va. 2015); ***Reid v. Comm'r of Soc. Sec.***, 769 F.3d 861, 865 (4th Cir. 2014).  Instead, an ALJ's decision need only "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating [his or her] determination and the reason or reasons upon which it is based."  ***Id***.  In other words, an ALJ need only "provide a minimal level of analysis that enables [a] reviewing court[] to track the ALJ's reasoning."  ***McIntire v. Colvin***, 2015 WL 401007 (N.D. W.Va. 2015).  Therefore, if an ALJ states that the "whole record was considered, . . . absent evidence to the contrary, we take [him] at [his] word."  ***Reid***, 769

---

[1]  The plaintiff also again takes issue with the ALJ's statement that the objective requirements needed to establish fibromyalgia are not contained in this evidence, which this Court has addressed herein.

9

F.3d at 865.

The ALJ begins his discussion of his findings of fact and conclusions of law by asserting that he gave the entire record "careful consideration." [Doc. 6-2 at 22]. He again iterates, and the discussion of his third finding makes clear, that he considered the entirety of the evidence in making his evaluations. [*Id.* at 22-23]. The ALJ's discussion of the plaintiff's credibility in particular reflects consideration of the entire record. [*Id.* at 25-28]. Accordingly, the inquiry becomes whether there exists evidence to suggest that the ALJ did not actually consider the whole record.

The plaintiff's objection asserts that, in her initial brief [Doc. 10], she listed numerous medical records that "not only contradicted the ALJ's factual conclusion but contained the exact type of evidence required by SSR 12-2p to establish the diagnosis of fibromyalgia." [Doc. 18 at 8]. Again, the plaintiff appears to have overlooked the fact that the ALJ's third finding was that "the claimant has . . . fibromyalgia." [Doc. 6-2 at 22]. As such, the plaintiff's argument that the ALJ failed to consider the entire record and thus reached the incorrect conclusion is undermined by the fact that the evidence cited by the plaintiff actually supports the conclusion reached by the ALJ in his third finding. Additionally, though not specifically referred to in the ALJ's discussion in which he ultimately concluded that the plaintiff has fibromyalgia, the ALJ's discussion of the plaintiff's credibility specifically cites to the medical records that the plaintiff argues were overlooked entirely. For example, the ALJ states that "[t]he claimant was diagnosed with fibromyalgia and prescribed Tramadol and physical therapy (Exhibit 5F and 8F)." [Doc. 6-2 at 26]. In Section (C.)(I.)(b.) of the plaintiff's initial brief, referenced by the objection, she cites to a report from Dr. Kafka's office in which the plaintiff's diagnosis remained fibromyalgia. [Doc. 10 at 7]. This

10

report is Exhibit 8F in the administrative record.  [Doc. 6-8 at 43-52].  This is the case with each piece of evidence cited in the plaintiff's argument that the record contained voluminous evidence establishing the diagnosis of fibromyalgia.[2]

Furthermore, as noted by the standard, the ALJ need not comment on every piece of evidence presented.  This appears to be the plaintiff's chief concern, as reflected by the fact that the evidence she cites to in the initial brief and again refers to in her objection consists of the few documents in the record not explicitly cited to by the ALJ in his discussion of his third finding.  Moreover, had the ALJ's discussion of the plaintiff's severe impairment of fibromyalgia specifically referenced these medical records that the plaintiff claims were ignored, his conclusion that the plaintiff has the severe impairment of fibromyalgia would have been the same because this evidence supports that conclusion. As such, the plaintiff has not even presented evidence contradictory to the ALJ's finding that the plaintiff has fibromyalgia, let alone evidence that would serve to undermine the ALJ's assertion that he considered the entire record in conducting his evaluation.  Upon review of the record, this Court finds that the magistrate judge properly found that the ALJ considered all of the relevant evidence when he determined that the plaintiff's fibromyalgia constitutes a severe impairment, and the plaintiff's objection is **OVERRULED**.

---

[2]The plaintiff's initial brief additionally cites to a Fibromyalgia Test, dated April 20, 2015, for which the plaintiff received a positive score.  [Doc. 10 at 8].  The Appeals Council specifically rejected consideration of this evidence in its denial of the plaintiff's request for review of the ALJ's decision because that test did not relate to the period of time analyzed by the ALJ.  [Doc. 6-2 at 3]. The ALJ's decision pertained to the time up until the date of his decision–specifically, June 27, 2014.  A test conducted almost a year later is of no probative value regarding the plaintiff's alleged disability prior to the date of decision because it would have been impossible for the ALJ to take into consideration at the time he conducted his evaluation.  Accordingly, this piece of evidence is not relevant to this Court's review.

**C.    The ALJ sufficiently accounted for the plaintiff's limitations.**

The plaintiff next objects to the magistrate judge's finding that the ALJ properly accounted for the plaintiff's limitations in the RFC because the ALJ and Magistrate Judge Trumble failed to account for the ability to work on a regular and continuing basis, and because Magistrate Judge Trumble misapplied the Fourth Circuit's holding in ***Mascio v. Colvin***, 780 F.3d 632 (4th Cir. 2015).  [Doc. 18 at 9].

The plaintiff argues that the RFC did not account for the variability of the plaintiff's condition, and that the RFC provided for a static ability without addressing the unpredictability of fibromyalgia.  The plaintiff avers that neither the ALJ nor the magistrate judge addressed her ability to work "on a regular and continuing basis."  [Doc. 18 at 9].  After quoting Social Security Ruling 96-8p, the plaintiff makes almost word-for-word the same argument as she did in her initial brief [Doc. 10 at 10-11], that the RFC failed to account for the variability of the plaintiff's condition, which is inconsistent with her testimony, SSR 12-2p, and the medical evidence, and that the ALJ failed to account for all of the plaintiff's physical and mental limitations in the RFC.  [Doc. 18 at 9-11].

Social Security Rule 96-8p provides that an RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect [her] capacity to do work-related physical and mental abilities."  SSR 96-8p. It is what an individual can do despite her limitations or restrictions–her maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, a discussion of which must be included in the RFC assessment.  *Id.*  In

order for a vocational expert's opinion to be relevant or helpful to the RFC assessment, "it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of [the plaintiff's] impairments."  *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989) (internal citations omitted).  The ALJ is afforded great latitude in posing hypothetical questions and need only pose those that are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Farnsworth v. Astrue*, 604 F.Supp.2d 828, 852-853 (N.D. W.Va. 2009).[3]  If the plaintiff suffers from a severe impairment that causes physical or mental limitations, then the hypothetical question must properly illustrate those limitations.  *See **Mascio v. Colvin***, 780 F.3d 632, 637-638 (4th Cir. 2015).  The ALJ need not set out the plaintiff's non-severe impairments, though the ALJ must still consider these non-severe impairments when determining the plaintiff's RFC.  *Farnsworth*, 604 F.Supp.2d at 858; *see also **Wolfe v. Colvin***, 2015 WL 401013 (N.D. W.Va. 2015).

Here, after the vocational expert described the plaintiff's past work as "a sedentary, skilled position, [Specific Vocational Preparation] level five," the ALJ asked him to assume a hypothetical individual with that job who is "limited to work at the light exertional level, except the work is with occasional posturals, except no crawling or climbing of ladders, ropes, or scaffolds."  [Doc. 6-2 at 56].  The ALJ's next hypothetical added the additional limitation that "the individual must have no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation."  [*Id.* at 57].  The ALJ's third hypothetical added the added the additional limitation that "the individual must be limited to simple, routine and repetitive

---

[3]Citing **Koonce v. Apfel**, 1999 WL 7864 (4th Cir. 1999); **Copeland v. Bowen**, 861 F.2d 536 (9th Cir. 1988).

tasks . . . not able to perform at a production rate pace, but can perform goal-oriented work." [*Id.* at 58]. The fourth hypothetical added the additional limitation that "the work must entail no more than occasional interaction with supervisors, coworkers, and the public." [*Id.*].

The plaintiff argues that these questions do not account for the variability of fibromyalgia; however, as correctly noted by Magistrate Judge Trumble's R&R, "variability" is not considered its own limitation in this context. [Doc. 17 at 39]. Notably, the RFC that resulted from the ALJ's analysis, including the vocational expert's guidance, reflects the *most* the plaintiff is capable of despite her limitations. In other words, the RFC is concerned with the plaintiff's "good days"–that which the plaintiff is capable of on a bad day (i.e. the least she is capable of despite her limitations) is not a consideration pursuant to RFC analysis. The RFC need not address the fact that the plaintiff's abilities may vary from day to day depending on her symptoms as that is not its purpose.[4]

The plaintiff argues that the ALJ also failed to account for her memory and concentration deficits. In so doing, the plaintiff avers that the magistrate judge's application of the holding in **Mascio** was erroneous. She notes the Fourth Circuit's holding that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,"[5] and avers that the ALJ failed to include his finding that the plaintiff "had moderate limitation in

_____

[4]It worth noting that the letters from Dr. Nelson and the plaintiff's former employer cited by the plaintiff in her variability argument were not relevant to the ALJ's RFC analysis, and her own testimony that she cites was considered not entirely credible, which this Court addresses herein.

[5]**Mascio**, 780 F.3d at 638 (internal citations omitted).

concentration, persistence, or pace" in the RFC finding. The plaintiff takes issue with the ALJ's use of "boilerplate phrases" and the magistrate judge's conclusion that, unlike in ***Mascio***, the ALJ explained why the plaintiff's limitation in memory and concentration would not affect her ability to work. [*Id.* at 11].

In ***Mascio***, the Court held, *inter alia*, that, because the ALJ gave no explanation as to why the claimant's indicated moderate limitation in concentration, persistence, or pace did not translate into a limitation in the RFC, remand was necessary. ***Mascio***, 780 F.3d at 638. The Court also took issue with an ALJ's use of boilerplate language derived from a Social Security Administration template because it undermines the ALJ's directive to "determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be [used] to decide how [the claimant's] symptoms affect [her] ability to work." ***Id***. at 639 (citing 20 C.F.R. § 416.929(a)). The Fourth Circuit's opinion noted that:

> [T]he ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.

***Id***. Accordingly, as has previously been explained by this Court, "the Fourth Circuit was concerned that the ALJ did not explain why [the claimant's] moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in [the claimant's RFC]. The Fourth Circuit noted, however, that the ALJ may find that concentration, persistence, or pace limitation would not affect [the claimant's] ability to work, in which case it would have been appropriate to *exclude it from the hypothetical tendered to the vocational expert*. In ***Mascio***, however, the ALJ gave no explanation

whatsoever."  **Hutton v. Colvin**, 2015 WL 3757204, at *3 (N.D. W.Va. 2015) (emphasis added).

The plaintiff's objection focuses mainly on the magistrate judge's statement that "the ALJ found that Plaintiff 'does have some limitation in memory [and] concentration' but that the evidence supports her ability to perform simple, routine and repetitive tasks.  However, unlike in **Mascio**, the ALJ explained why Plaintiff's limitation in memory and concentration would not affect her ability to work"  [Doc. 17 at 41].  The plaintiff argues that these sentences conflict with one another, asserting that the ALJ limited the plaintiff to a certain class of jobs because of her memory and concentration issues but did not properly include these limitations in the RFC.  This assertion is too narrow and does not consider the RFC as a whole.  The ALJ found that the plaintiff "has the residual capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) . . .."  [Doc. 6-2 at 24].  Following an analysis of the plaintiff's medical records regarding her fibromyalgia and of her credibility, the ALJ found that "the totality of the evidence supports [the plaintiff's] ability to perform the limited range of light exertional work activity prescribed above [as defined in 20 C.F.R. § 404.1567(b)], which fully accommodates her symptoms, including any fatigue."  [*Id.* at 26-27].  The ALJ then turned to the plaintiff's mental impairment, detailing the treatment that the plaintiff received for it.  [*Id.* at 27].  The ALJ then found that "[b]ased on the evidence of [the plaintiff's] mental impairment . . . she is capable of the limited range of work activity prescribed above [as defined in 20 C.F.R. § 404.1567(b)]."  [*Id.*].

Thus, it is apparent from the RFC that the plaintiff's memory and concentration limitations did not affect the class of jobs the ALJ found to be appropriate for the plaintiff.

His conclusion as to her work abilities was the same before and following his assessment of the plaintiff's mental impairment, which included his finding that she does have some limitation in memory and concentration. As such, pursuant to **Mascio**, the ALJ was under no obligation to specifically include this limitation in his hypothetical tendered to the vocational expert. The ALJ did, however, explain in the RFC why he found that her limitation in memory and concentration would not affect her ability to perform the work he had already concluded was appropriate. The ALJ's opinion states that "[t]he objective evidence supports that her symptoms are generally controlled with medication," that the plaintiff "has not had any emergency room visits or hospitalizations for mental issues, and the record shows no significant difficulty interacting with others," and that "she reported activities, such as driving, preparing easy meals, shopping in stores and by computer, and visiting with grandchildren that support an ability to interact appropriately with others, and some ability to concentrate and complete tasks." [Doc. 6-2 at 27]. Thus, the ALJ found that while "she does have some limitation in memory, concentration and social functioning, the evidence supports her ability to perform the unskilled, low stress work with limited interaction as prescribed above [as defined in 20 C.F.R. § 404.1567(b)], which also accommodates her pain and fatigue." [*Id.*]. The ALJ provided three distinct reasons for why he found that the plaintiff's limitations in memory and concentration did not affect the class of jobs he found to be appropriate for her. As such, the ALJ acted in accordance with **Mascio**, and the magistrate judge's findings were proper.

Moreover, the plaintiff's concern with boilerplate language appears to be confined to the ALJ's use of the phrases "simple routine and repetitive tasks," "no production rate

pace," and "occasional interaction with [others]." [Doc. 18 at 11]. In a footnote, the plaintiff expresses concern that they did not inform the vocational expert that the plaintiff had deficiencies of concentration, persistence, and pace. The Fourth Circuit's concern with boilerplate language pertained to its use in an actual RFC analysis. *Mascio*, 780 F.3d at 639. The ALJ's use of these phrases in the hypothetical tendered to the vocational expert was not the use of concern to the Fourth Circuit. The plaintiff's argument is meritless.

Accordingly, this Court finds that the magistrate judge properly found that the ALJ accounted for all of the plaintiff's limitations, and the plaintiff's objection is **OVERRULED**.

### D. The ALJ properly considered the plaintiff's credibility.

Finally, the plaintiff argues that the magistrate judge did not address the issue of credibility the same way as the ALJ, averring that the ALJ's discussion of the plaintiff's credibility was insufficient. She focuses her argument on her assertion that the ALJ failed to discuss certain parts of the plaintiff's medical record that contradicted his conclusions, arguing that the "correct issue here is whether the ALJ is allowed to cherry pick bits and pieces of an exhibit he feels support his finding while ignoring the majority of an exhibit that is contrary to his finding." [Doc. 18 at 12-15].

As articulated by the Fourth Circuit, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must expressly consider whether the claimant has demonstrated, through objective medical evidence, that a medical impairment exists that is capable of causing the degree and type of pain alleged. *Id*. Notably, objective medical evidence is, for example, medical records compiled by medical professionals rather than

subjective complaints of pain or a condition. Here, after consideration of the evidence that included a multitude of medical records, the ALJ determined that the plaintiff proved that she "has medically determinable impairments that could reasonably be expected to cause some of the symptoms described." [Doc. 6-2 at 25]. Thus, the ALJ complied with the first step of the analysis.

The second step, as defined by the Fourth Circuit, is for the ALJ to consider the credibility of the plaintiff's subjective allegations of pain in light of the entire record. *Craig*, 76 F.3d at 595. Social Security Ruling 96-7p[6] sets out several factors for an ALJ to use when assessing the credibility of a claimant's subjective symptoms and limitations, which include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . .; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p. The plaintiff argues that the ALJ did not include such reasoning in his decision.

---

[6]The Court notes that SSR 96-7p was superseded by SSR 16-3p, effective March 28, 2016. However, SSR 96-7p was the effective statute at the time of the ALJ's opinion, and its application remains pertinent in this case.

However, review of the ALJ's decision indicates that the ALJ did, in fact, utilize and consider these factors in analyzing the plaintiff's credibility. Factors, unlike elements, are a list of considerations that *may* be made in making a determination; the use of each factor is not mandatory. As noted by the Court, an ALJ has "no requirement that he state specific findings as to each factor." **Wolfe v. Colvin**, 2015 WL 401013, at *4 (N.D. W.Va. 2015). However, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Because the ALJ has the opportunity to observe the demeanor of the plaintiff, the ALJ's observations concerning the plaintiff's credibility are given great weight. **Shively v. Heckler**, 739 F.2d 987, 989 (4th Cir. 1984). If the ALJ meets his basic duty of explanation, then "an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" **Sencindiver v. Astrue**, 2010 WL 446174, at *33 (N.D. W.Va. 2010) (quoting **Powers v. Apfel**, 207 F.3d 431, 435 (7th Cir. 2000)).

The ALJ found that the plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible" for the reasons he elaborated upon throughout his opinion. [Doc. 6-2 at 25]. The ALJ's articulated factors that undermine her credibility include (1) that the plaintiff's primary care physician released her back to work, and that no other treating physician said she was unable to work, at which time she quit her job without attempting to resume her duties after expressing that she got angry and stressed out due to work; (2) that the plaintiff did not comply with many of the treatments recommended to her, including prescription medication, which she stopped

taking without doctor approval; and (3) the list of the plaintiff's activities, which did not appear significantly limited. [*Id.*]. The ALJ also explained specific evidence from her medical record that undermined her credibility, including her noncompliance with the treatment recommendations of many different physicians and that several medical reports indicated symptoms that were not as severe as the plaintiff claimed them to be. [*Id.* at 26]. Throughout his explanation, the ALJ addressed the weight accorded to the opinions of the various medical professionals who had assessed the plaintiff. [*Id.* at 27-28].

Ultimately, the ALJ opined that the plaintiff's "allegations as to the intensity, duration, and limiting effects of fibromyalgia are not entirely credible when viewed with the record as a whole." [*Id.* at 26]. He reasoned that because "[n]o treating source has opined that the claimant is permanently unable to work, and examinations do not support her allegations of limitation;" because "she has been non-compliant with treatment options, and despite stopping her medication on her own, she has not been hospitalized for her impairment, which suggests her pain and limitation are not as severe as she alleges;" and because "she has reported improvement in pain with nerve blocks and injections, she is able to ambulate without an assistive device, and she reports activities that are not significantly limited," the totality of the evidence supports that the plaintiff could perform the range of exertional work activity described. [*Id.* at 26-27]. The Court finds that this analysis complies with the requirements of the second step of the disability determination.

In an attempt to show that the ALJ's credibility determination is wrong, the plaintiff argues that the ALJ ignored evidence that contradicted his conclusion. [Doc. 18 at 13-15]. Importantly, this Court's review is to determine whether the ALJ's findings are supported by substantial evidence. As explained herein, the Court is concerned with whether the

ALJ's finding that the plaintiff was not disabled as defined by the Social Security Act is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). The "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Sec'y of Labor v. Mutual Mining, Inc.*, 80 F.3d 110, 113 (4th Cir. 1996) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996)). As such, the fact that evidence exists that contradicts the ALJ's ultimate finding is not fatal if "evidence that a reasonable mind might accept as adequate to support a conclusion" exists to support the ultimate finding. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The plaintiff's objection reflects a misunderstanding of the ALJ's opinion. The record shows that the plaintiff does, in fact, have impairments, and the ALJ acknowledged that the plaintiff is impaired. However, pursuant to his RFC evaluation, the ALJ found that the plaintiff's impairments were not as severe as she alleged and did not cause her to be disabled as defined by the statute. The evidence that the plaintiff alleges contradicts the ALJ's finding was addressed in the ALJ's opinion. For example, the plaintiff argues that the ALJ ignored Dr. McCullough's report. [Doc. 18 at 13]. However, the ALJ stated that "the opinion of independent psychologist Rod McCullough, M.A., is given little weight" because of inconsistencies and because it was based on a one-time assessment. [Doc. 6-2 at 28]. The plaintiff also argues that the ALJ ignored evidence that showed that the plaintiff agreed to medical treatment that was then unsuccessful. [Doc. 18 at 15]. However, the plaintiff's argument ignores the evidence highlighted by the ALJ that indicates that the plaintiff

summarily refused many treatment recommendations on several occasions, including physical therapy and pool therapy. [Doc. 6-2 at 25-26].

The plaintiff additionally argues that her Adult Function Report, in its entirety, was ignored by the ALJ, who "ignored the parts that did not fit that portrayal." [Doc. 18 at 14]. That the ALJ did not mention each particular aspect of the plaintiff's limitations does not attenuate his finding that her daily activities served to undermine her credibility as to the severity of her symptoms, especially in light of the fact that the information from the Adult Function Report was not the only reason that the ALJ did not regard the plaintiff as entirely credible. Taking the ALJ's opinion as a whole, these omissions do not negate the plethora of evidence that the ALJ cites in support of his conclusion. The plaintiff's argument that the ALJ did not properly consider the plaintiff's work history is equally as unpersuasive. The statute does not specifically require the ALJ to consider the plaintiff's work record in the way she asserts. Moreover, the letter that the plaintiff claims "resolved this issue once and for all" [Doc. 18 at 14] was sent to the Appeals Council after the ALJ issued his decision. [Doc. 6-6 at 61-62]. As such, the ALJ did not take the letter into consideration in issuing his opinion. The fact that the ALJ's "speculation" with regard to the reason the plaintiff left her job is disagreeable to the plaintiff does not cause his opinion to be wrong. In sum, the plaintiff has pointed to no evidence that is sufficient to undermine the ALJ's credibility assessment, nor is any apparent to the Court. The ALJ properly assessed the plaintiff's credibility pursuant to the Fourth Circuit's guidance.

In reviewing the ALJ's decision and the entirety of the administrative record, it is apparent to the Court that the ALJ was successful in ensuring that his opinion was thorough and well-founded in the plaintiff's medical history. The ALJ provided continual support for

his findings with citations to the evidence of record. Review of the record indicates that the ALJ's decision is, in fact, supported by substantial evidence that a reasonable mind would accept as adequate to support his ultimate conclusion. The ALJ was not required to mention each specific piece of evidence contained in the record, and there is nothing to suggest that the ALJ did not actually consider the entirety of the record. For all of the foregoing reasons, this Court finds that the ALJ's decision is supported by substantial evidence, and the plaintiff's objection is **OVERRULED**.

## IV.    CONCLUSION

Upon careful consideration of the above, it is the opinion of this Court that the **Report and Recommendation [Doc. 17]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Further, the plaintiff's Objections **[Doc. 18]** are **OVERRULED**. Thus, the defendant's Motion for Summary Judgment **[Doc. 11]** is **GRANTED**, and the plaintiff's Motion for Summary Judgment **[Doc. 9]** is **DENIED**.

Accordingly, this Court hereby **DENIES** and **DISMISSES WITH PREJUDICE** the plaintiff's Complaint **[Doc. 1]** and **ORDERS** that this matter be **STRICKEN** from the active docket of this Court. The Court further **DIRECTS** the Clerk to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: January 31, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE